**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **BARRY BUCKHANON and** | § | |
| **RODNEY FRALEY,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **CASE NO.:  3:05-cv-0741-wkw** |
| | § | |
| **HUFF & ASSOCIATES** | § | |
| **CONSTRUCTION COMPANY, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**BRIEF IN REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HUFF & ASSOCIATES CONSTRUCTION COMPANY, INC.**

COMES NOW the Defendant, Huff & Associates Construction Company, Inc. ("Huff"),

and hereby offers the following submission in reply to Plaintiffs' Response to Huff's pending

Motion for Summary Judgment:

I. **Plaintiffs' testimony fails to establish sufficient evidence of pervasiveness or severity**

In responding to Huff's Motion for Summary Judgment, Plaintiffs direct the Court to

their deposition testimony and affidavit testimony from two third parties.  As noted in Huff's

principal brief, the Supreme Court stated that "we have made it clear that conduct must be

extreme to amount to a change in the terms and conditions of employment. . . ."  See Faragher v.

City of Boca Raton, 524 U.S. 775, 788 (1998).  Consequently, it is only where the workplace is

"permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive working

environment,' [that] Title VII is violated."  See National Railroad Passenger Corp. v. Morgan,

536 U.S. 101, 116 (2002) quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

Plaintiffs' own testimony simply does not suffice to establish the level of pervasiveness or severity contemplated by the Supreme Court and the Eleventh Circuit, and the third-party affidavits are ineffectual to the extent they attempt to bolster the Plaintiffs' evidentiary showing.

First, Buckhanon attempts to inflate the validity of his claim by suggesting that, despite his identification of only two specific occasions, Bobby Myers used the word "nigger" on "plenty" of other occasions. <u>See</u> Plaintiff' Brief at 9. In fact, Buckhanon was questioned in detail during his deposition concerning his recollection of Myers' racial language. Buckhanon clearly testified that he never heard Myers use a racial slur toward any other African-American employee, nor could he cite anything beyond the two statements set out in Huff's principal statement of fact (<u>i.e.</u>, the statement to Buckhanon and Fraley over lunch and the statement to Jimmy Langley over the two-way radio). Buckhanon's specific testimony is as follows:

> Q: Were there other African-American employees on the job site other than you and Mr. Fraley?
>
> A: On the site period?
>
> Q: Yes.
>
> A: Yes, it [sic] was.
>
> Q: Did you ever hear Mr. Myers make derogatory comments toward them?
>
> A: Yeah. He'll like, you know, get to fussing at them or hollering or something if they ain't doing something the exact way he wants it. And he'll start fussing.
>
> Q: Did you ever hear –
>
> A: Get an attitude, get loud, start hollering.
>
> **Q: Did you ever hear Mr. Myers make any racial slurs toward any of the other black employees?**

**A: No, sir. Not that I recall. No, sir.**

**Q: All right. Other than what we've talked about [p. 35 line 6 – p. 41 line 16], did you ever overhear or witness Mr. Myers making any other racial slurs or comments at all other than what you already told me?**

**A: No. Not that I recall.**

Q: Have you told me about all of the racially derogatory slurs that you heard Mr. Myers make during your time at Huff?

A: Yes, sir. He made them plenty, but I – that's all that I can really think of.

See Buckhanon Dep. at p. 47 line 17 – p. 49 line 4 (emphasis added). Subsequently, Buckhanon

was given additional opportunities to identify and articulate any use of racial epithets above and

beyond the two instances he had identified. Even after significant contemplation, he could not

do so:

**Q: And, again, just so I'm clear, have you told me about all of the racially –**

**A: Yes, sir.**

**Q: -- oriented language that he used in your presence?**

**A: Yes, sir. All that I can recall right now.**

**Q: And you've given this a good bit of thought, haven't you –**

**A: Yes, sir.**

**Q: -- before today?**

**A: Yes, sir.**

**Q: And that's all – what you've told me is all you can recall he said?**

**A: All I recall.**

See Buckhanon Dep. at p. 65 line 10 – p. 66 line 3 (emphasis added).  Viewing the totally of

Buckhanon's testimony, it is evident that he can identify only two instances over two months

where Myers allegedly used derogatory language.  Even if Buckhanon's single gratuitous and

generic reference to Myers' alleged use of "plenty" of other racial slurs is legitimate, he has not

supplied this Court with any evidence as to the nature and content of the language used, any

witnesses (intended or unintended) to the language, or the time, place, or context thereof.

Therefore, Buckhanon's reliance on this solitary shred of testimony cannot assist his effort to

foreclose Huff's entitlement to summary judgment.

The evidence submitted by Rodney Fraley is even weaker than that offered by

Buckhanon.  Although Fraley's counsel makes reference to three instances of Myers using the

term "nigger," Fraley cited only two instances of racially-oriented statements made by Myers

during his two-month employment period, and he concedes that one of those statements (the two

way radio statement to Langley) was not directed at him, nor did Myers even know that he was

present.  See Fraley Dep. at p. 27 line 19 – p. 28 line 5, p. 29 line 23 – p. 30 line 5; p. 39 line 22

– p. 40 line 3.  There is no evidence that any employee other than Brad Connell, a Caucasian

employee, quit because of Myers, and Buckhanon was the only termination that Fraley could

recall.  See Fraley Dep. at p. 44 lines 16-21.  Finally, Fraley contradicted his earlier sworn

statement to the EEOC in conceding (during deposition) that he never heard Myers use any

racially derogatory language toward Hispanic employees.  See Fraley Dep. at p. 30 line 21 – p.

31 line 1.[1]  Thus, Fraley's claim clearly fails for reasons applicable to Buckhanon.

---

[1] In his EEOC statement, Fraley alleged that Myers "also made insulting and denigrating comments to the Hispanic workers on the job site" including telling them that "they needed to go back to Mexico and that they did not know anything."  See Fraley EEOC Statement, Exhibit E to Motion for Summary Judgment.

Setting aside issues of frequency and severity, Plaintiffs have totally failed to demonstrate that Myers' language/conduct unreasonably interfered with their job duties. Plaintiffs concede that Myers occasionally cursed at other employees, regardless of race, yet they cite only one other employee – a Caucasian – who quit or was terminated during their tenures as Huff employees. See Fraley Dep. at p. 31 lines 2-9; p. 44 lines 16-21; Buckhanon Dep. at p. 74 line 21 – p. 76 line 23. Moreover, the evidence before the Court indicates that Plaintiffs chose to interact with Myers beyond the specific responsibilities of their employment. Examples include Plaintiffs' acceptance of Myers' offer of transportation between their homes in Tallassee and the construction site in Auburn and the fact that Myers ate lunch with Buckhanon and Fraley "just about every day." See Buckhanon Dep. at p. 31 lines 9-21; p. 71 line 22 – p. 72. line 3; Fraley Dep. at p. 21 line 16 – p. 22 line 7; p. 28 lines 6-10. Finally, neither Plaintiff complained to Myers' superiors concerning his behavior or any impact on their ability to perform their work tasks. In short, Plaintiffs' testimony serves as the primary basis for the conclusion that they have failed to present evidence sufficient to foreclose Huff's Motion for Summary Judgment.

II. **Plaintiffs' other evidence fails to create an issue of fact concerning hostile environment**

Beyond their own testimony, Plaintiffs rely on the affidavit testimony of Bobby Nichols, a friend/acquaintance who then became their co-worker for literally a matter of hours. Nichols indicates that he began working at the KA jobsite on July 26, 2004 – Buckhanon's undisputed last day on the job. See Buckhanon Dep. at p. 49 lines 10-13. Nichols states that "[d]uring the next couple of days I personally heard Myers use the word "nigger" when speaking to Buckhanon and/or Fraley." See Nichols Affidavit.

In his deposition, however, Buckhanon testified about his last day and specifically the dispute he had with Myers about continuing to work despite looming weather concerns. See Buckhanon Dep. at p. 49 line 14 – p. 52 line 8. Buckhanon denied that Myers used any racial slurs on this occasion, and Buckhanon has cited no instance of Myers using a racial slur at any point during that single day where he and Nichols ostensibly overlapped. See Buckhanon Dep. at p. 49 lines 10-13; p. 52 lines 17-23.

Fraley worked one more day after Nichols came on board, but he has not identified any racial slurs used by Myers during the last two days of his employment. See Fraley Dep. at p. 22 lines 16-19; p. 35 line 9 – p. 36 line 1. It should also be noted that, when Fraley was asked in deposition to identify any other individual who could speak to Myers' alleged use of racial slurs, he did not mention Nichols, only his fellow plaintiff, Barry Buckhanon, and Jimmy Langley. See Fraley Dep. at p. 38 lines 7-15. Thus, even if Nichols' affidavit testimony is taken as true for purposes of this motion, there is no evidence that either Fraley or Buckhanon was aware of any epithet supposedly heard by Nichols. Consequently, any statement referenced by Nichols could not have contributed to the Plaintiffs' subjective view of a racially hostile environment. See Edwards v. Wallace Community College, 49 F.3d 1517, 1522 (11th Cir. 1995) (statements not known to the plaintiffs until after their termination could not contribute to a subjective view of hostile environment).

Plaintiffs also offer the affidavit of Jerry Garrett, a longtime friend who drove them to the KA jobsite on July 30, 2004. It is undisputed that this visit occurred several days after Buckhanon was terminated and Fraley had quit his job. See Affidavit of J. Garrett; Buckhanon Dep. at p. 49 lines 10-13; Fraley Dep. at p. 35 lines 1-8. Garrett charges that Myers responded

with a torrent of racial-oriented profanity after Buckhanon and Fraley requested that Myers give them their final paychecks. See id.

As an initial matter, Garrett's affidavit is due to be stricken as based on hearsay and containing conclusory statements.[2]  Moreover, it is interesting to note that, although both Fraley and Buckhanon referenced this encounter during their deposition testimony, only Fraley made any reference to Myers using racially offensive language – a single racial epithet versus Garrett's significantly more offensive allegations.  See Buckhanon Dep. at p. 54 line 10 – p. 58 line 3; Fraley Dep. at p. 36 line 2 – p. 38 line 3.   Ultimately, Plaintiffs' reliance on Garrett's testimony is unavailing because the paycheck incident undisputedly occurred after their separations from service with Huff, therefore it could not have contributed to Plaintiffs' subjective view (or any objective view) of a hostile work environment.  See Edwards, 49 F.3d at 1522; Carpenter v. Kelley Foods of Alabama, Inc., 2005 U.S. Dist. LEXIS 35453 at *10 (M.D. Ala. 2005) (incidents relied upon by plaintiffs did not occur until after their terminations and thus were immaterial to determination of hostile environment).

Finally, Plaintiffs suggest that summary judgment is inappropriate because Myers' deposition testimony demonstrates the "characteristics of a true racist" and "a deep seeded belief of racial superiority."  See Response at p. 10.  Remarkably, they offer Garrett's affidavit testimony recounting racial slurs Myers allegedly made at another commercial establishment having no temporal or substantive relationship whatsoever to Huff operations or to either of the Plaintiffs. See Garrett Affidavit.  Much like the references to Myers "cursing" or "fussing" on

---

[2] Huff has contemporaneously filed a motion to strike the affidavits of Garrett and Bobby Dean Nichols.  Both affidavits consist of hearsay in the form of statements allegedly made by Myers.   Both affidavits also contain conclusory statements concerning Myers' alleged statements/behavior and are due to be stricken on that basis as well.  See Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 and n. 6 (district court properly struck conclusory and generalized allegations of racial bias in affidavits); see also Navarre v. City of Andalusia, 2006 U.S. Dist. LEXIS 42389 at *14 and n. 7 (M.D. Ala. 2006).

the jobsite, these statements are transparent efforts to taint Myers in the eyes of the Court and divert its attention from the dearth of evidence suggesting a racially hostile environment during the Huff employment.  Plaintiffs then gratuitously argue that "[a]ny reasonable person would find Myers' conduct to be both hostile and abusive," but they fail to cite a single case wherein similar conduct in a similar context over a similar timeframe was considered sufficient to forestall summary judgment.  See Response at p. 10.

In summary, Huff has demonstrated that Plaintiffs' evidentiary showing, even if taken as true for purposes of this Motion, falls far short of what is necessary to submit these claims to a jury.  Federal employment law is clear that the " '[m]ere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' [does] not sufficiently alter [the] terms and conditions of employment to violate Title VII."  See Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) citing Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir. 1971).  Plaintiffs, however, have offered this Court nothing more than one incident purportedly involving a racial epithet stated over lunch and one other occasion where a slur was supposedly used in a conversation that neither Plaintiff participated in or was intended to hear.  A record based on nothing more than this clearly demands the entry of summary judgment, and thus Huff respectfully urges this Court to enter an Order granting its Motion and dismissing the Plaintiffs' claims with prejudice.

/s/ **BENJAMIN C. WILSON**  (asb-1649-i54b)
**Attorney for Defendant**
**Huff & Associates Construction Company, Inc.**

**OF COUNSEL:**
**RUSHTON, STAKELY, JOHNSTON**
**& GARRETT, P.A.**
**P.O. Box 270**
**Montgomery, Alabama  36101-0270**
**Phone:  (334) 206-3194**
**Fax:  (334) 481-0831**
**bcw@rsjg.com; dr@rsjg.com**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have electronically filed above and foregoing document with the Court via CM-ECF, on this the 28th day of August 2006, and that service will be made electronically by CM-ECF on the following counsel of record:

James R. Bowles, Esq.
BOWLES & COTTLE
2 South Dubois Avenue
P.O. Box 780397
Tallassee, Alabama 36078

/s/ Benjamin C. Wilson_____
OF COUNSEL